## UNITED STATES v. WELSH.

(District Court, S. D. New York. March 22, 1918.)

WAR ⊂⟩4—TRADING WITH THE ENEMY ACT—VIOLATIONS.

Under Trading with the Enemy Act Oct. 6, 1917, c. 106, § 3, subd. (c), 40 Stat. 412, declaring that it shall be unlawful for any person, other than a person in the service of the United States government, or the government of any nation, except that of any enemy or ally of an enemy nation, etc., to send or bring into the United States any letter, or other writing or tangible form of communication, except in the course of mail, and that it shall be unlawful for any person to send, take, or transmit any letter or communication intended for, or to be delivered, directly or indirectly to, an enemy or ally of an enemy, one not in the service of the government of the United States, or of any friendly nation, who attempted to bring into the United States in a secret manner, not in the due course of the mails, a letter from England, is guilty of a violation of the act, though it did not appear that the letter was intended to be delivered to an enemy of the United States; the clause inhibiting the bringing into or sending out of the United States communications other than in the regular course of the mails not being restricted to communications intended for enemies.

Thomas Welsh was charged with a violation of Act Oct. 6, 1917, known as the "Trading with the Enemy Act." On demurrer to the indictment. Demurrer overruled.

See, also, 247 Fed. 239.

Martin Conboy and Edwin N. Moore, both of New York City, for demurrant.

Francis G. Caffey, U. S. Atty., and James W. Osborne, Asst. U. S. Atty., both of New York City, opposed.

MAYER, District Judge. The indictment charges in two counts an alleged violation of the act of October 6, 1917, known as the "Trading with the Enemy Act." The first count charges that the defendant "did unlawfully, feloniously, and willfully, and not in the regular course of the mail, but upon the person of the said Thomas Welsh and in a secret manner, attempt to bring into the United States, to wit, into the city of New York, county of New York and state of New York, from a foreign country, to wit, England, a certain tangible form of communication, to wit, a certain letter and writing written by a person whose name is to the grand jurors unknown, to be delivered to a person whose name is to the grand jurors unknown; that the said tangible form of communication is of the tenor following: [setting it forth in full.] And * * * that the said Thomas Welsh then and there was not a person in the service of the government of the United States, and was not a person in the service of any nation other than an enemy of the United States or an ally of an enemy of the United States. * * *"

The second count is in all respects like the first, except that this count charges that the defendant "did bring into the United States" the same "tangible form of communication" referred to in the first count. In neither count is it charged that the tangible form of communication "was intended for or to be delivered to" an enemy or ally of enemy of the United States.

The ground of the demurrer is that, because of the failure to charge that the tangible form of communication "was intended for or to be delivered to" an enemy or ally of enemy of the United States, the indictment does not set forth the crime. So much of the statute as is here applicable reads as follows:

"Sec. 3. That it shall be unlawful— * * *

"(c) For any person (other than a person in the service of the United States government or of the government of any nation, except that of an enemy or ally of enemy nation, and other than such persons or classes of persons as may be exempted hereunder by the President or by such person as he may direct), to send, or take out of, or bring into, or to attempt to send, or take out of, or bring into the United States, any letter or other writing or tangible form of communication, except in the regular course of the mail; and it shall be unlawful for any person to send, take, or transmit, or attempt to send, take, or transmit out of the United States, any letter or other writing, book, map, plan, or other paper, picture, or any telegram, cablegram, or wireless message, or other form of communication intended for or to be delivered, directly or indirectly, to an enemy or ally of enemy: Provided, however, that any person may send, take, or transmit out of the United States anything herein forbidden if he shall first submit the same to the President, or to such officer as the President may direct, and shall obtain the license or consent of the President, under such rules and regulations, and with such exemptions, as shall be prescribed by the President."

The contention is urged by defendant that into the first paragraph of subdivision (c) supra, which ends at the semicolon, must be read the words at the conclusion of the second paragraph; i. e., to an enemy or ally of enemy. It will be noted that the second paragraph denounces as unlawful the sending, taking, or transmitting, etc., of any letter or other writing, etc., intended for or to be delivered directly or indirectly to an enemy or ally of enemy by any means whatsoever; that is to say, whether by mail or otherwise. Under subdivision (d) a censorship may be established by presidential proclamation; but, notwithstanding that power, the provision under subdivision (c) just referred to makes unlawful the sending, taking, or transmitting of any letter, inter alia, intended for an enemy. That provision is not inconsistent with, nor a duplication of, the provision in the first half of subdivision (c) preceding the semicolon. It is plain that the Congress realized that persons arriving in this country, or leaving this country, might bring or carry tangible forms of communication, not merely to an enemy, as enemy is defined in the act, but to some person or persons who would be citizens of our own country, or of some other friendly nation, and yet who might secretly be opposed to our government and its purposes in connection with the war. A communication harmless on its face might nevertheless conceal a sinister plan or an inimical piece of information, and might reach the hands of some inimical or thoughtless person, to the detriment of the United States in connection with its war activities.

It is therefore clear that the purpose of the statute was to prohibit bringing into or taking out of the United States any letter or other writing or tangible form of communication on the person of the traveler. The necessity of such a safeguard is too plain for argument.

The construction of subdivision (c) fully confirms the conclusion that the paragraph here under consideration was intended to apply to any tangible communication, whether innocent or not, and whether intended

for or delivered to a friendly or innocent person. The semicolon clearly breaks up the subdivision into two paragraphs. It would have been simple enough to add the words, "intended for * * * an enemy" after the word "mail," or in some appropriate place in the first paragraph of subdivision (c). On the contrary, in the second paragraph of subdivision (c) the words are repeated, "it shall be unlawful," thus indicating clearly that the offenses under subdivision (c) were divided into two classes, one covered by the first and the other by the second paragraph.

The construction for which defendant contends would impair the act to the extent of removing a safeguard, the need for which numerous events have shown to be obvious. The demurrer is overruled.

I see no merit in the motion to quash, and that is denied.