UNITED STATES v. VAN WERKHOVEN.

(District Court, S. D. New York. March 25, 1918.)

1. WAR ☞15—TRADING WITH THE ENEMY ACT—VIOLATIONS.

It is not a violation of Trading with the Enemy Act Oct. 6, 1917, c. 106, § 3, subd. (c), 40 Stat. 412, declaring it unlawful for any person other than a person in the service of the United States government, or of the government of any nation, except that of an enemy or ally of an enemy nation, and other than persons or classes of persons exempted by the President, to send or take out of or bring into the United States any letter or other writing or tangible form of communication, except in the regular course of the mail, for one not falling within the excepted classes to bring into the United States a coupon gold note issued by an American corporation, which bore no communications other than its proper printed contents, for the purpose of the act is only to prevent all communications between the enemy and persons within the United States.

2. WAR ☞15—TRADING WITH THE ENEMY ACT—VIOLATIONS.

Yet it is a violation to bring into the United States coupons for interest due on bond of a friendly power, where on the back of the coupon was stamped "C L" and below it likewise "Lille," as well as certain figures, for, the purpose of such writings not being disclosed, they might well contain a communication which it was the purpose of the act to exclude.

Johannes Hendrik Van Werkhoven, alias M. Jansen, was indicted for a violation of Trading with the Enemy Act Oct. 6, 1917, § 3, subd. (c), by unlawfully bringing into the United States certain writings or tangible form of communication. On demurrer to the indictment. Demurrer sustained as to the third and fourth counts, and overruled as to the fifth and sixth counts, of the indictment.

Jerome C. Lewis, of New York City, for demurrant.

Francis G. Caffey, U. S. Atty., and Ben A. Matthews, Asst. U. S. Atty., both of New York City.

MAYER, District Judge. Defendant has demurred to the six counts of an indictment against him. On the argument the demurrer was overruled as to the first and second counts, and reference need not be further made to that branch of the controversy.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The third and fourth counts set forth, in substance and effect, that on February 13, 1918, defendant unlawfully brought into the United States a certain writing or tangible form of communication in violation of section 3, subdivision (c) of the Act of October 6, 1917, known as the "Trading with the Enemy Act." The writing referred to in the third and fourth counts is a 6 per cent. coupon gold note for '$500 of the United Fruit Company, an American corporation. It is not alleged that there is any writing or marking of any kind or description on this coupon gold note, other than its proper printed contents.

[1] It is contended by the government that this gold note is a "writing or tangible form of communication" in the sense in which those words are used in section 3, subdivision (c), of the act. I have recently discussed in United States v. Welsh, 250 Fed. 309, filed March 22, 1918, the purposes of the section of the act here under consideration. I there stated:

"It is plain that the Congress realized that persons arriving in this country, or leaving this country, might bring or carry tangible forms of communication, not merely to an enemy, as enemy is defined in the act, but to some person or persons who would be citizens of our own country or of some other friendly nation, and yet who might secretly be opposed to our government and its purposes in connection with the war. A communication harmless on its face might nevertheless conceal a sinister plan or an inimical piece of information, and might reach the hands of some inimical or thoughtless person, to the detriment of the United States in connection with its war activities. It is therefore clear that the purpose of the statute was to prohibit bringing into or taking out of the United States any letter or other writing or tangible form of communication on the person of the traveler. The necessity of such a safeguard is too plain for argument."

The coupon gold note set forth in the indictment is not, however, a writing or other tangible form of communication, within the meaning of section 3, subdivision (c). The construction for which the government contends would, for instance, make it unlawful for an American traveler to bring back on his person from abroad his letter of credit— a result obviously not intended. It must be remembered that this provision of the act does not refer to bringing into the country money or evidences of indebtedness, but was enacted as a safeguard against secret communications. This section of the act does not apply, inter alia, to such persons or classes of persons as may be exempted by the President. That provision of the act was to enable the President to classify into groups such persons as in his judgment were not to be amenable to this provision of the statute, and that provision is manifestly irrelevant in the case at bar.

At the conclusion of section 3, subdivision (c), is a proviso that any person may send, take, or transmit out of the United States forbidden matter, if he obtains the license or consent of the President, or such officer as the President may direct, under such rules and regulations and with such exemptions as shall be prescribed by the President. It will be noted that this proviso relates only to written matter going out of the United States, and not to that coming in. There cannot conceivably be anything in a recognized bond or note, such as that referred to in the third and fourth counts of the indictment, which in any way can convey any information of the character against which the statute is intended to safeguard. To hold that such a bond is a writ-

ing or tangible form of communication, within the purview of the statute, would be to strain its meaning and give the statute a rather absurd interpretation—a result which is always unfortunate, and in the end may tend to defeat the useful purposes for which the statute was enacted. The demurrer to the third and fourth counts must therefore be sustained.

[2] The fifth and sixth counts charge defendant with bringing into the United States a certain writing or tangible form of communication, which, in this instance, is a coupon for 8 shillings sterling, being one-half year's interest due on a bond of the Imperial Japanese government. On the back of the coupon set forth in the fifth count, the following is stamped: "C L," and below it likewise stamped, "Lille." "Lille" may be the name of a city now under German control; but why that name is stamped on the back of the coupon does not appear from the face of the indictment, nor is there any explanation of the letters "C L." In other words, "C L" and "Lille" are writings extraneous to the coupon, and in no sense, so far as appears from the indictment, any part thereof.

The coupon referred to in the sixth count of the indictment is of the same general character as that of the coupon in the fifth count, except that on this coupon are stamped the figures "212," and "C L," and "Lille" do not appear. There is no explanation as to the meaning of these stamped figures "212," and these figures are also extraneous to the subject-matter of the printed coupon. There is nothing to show what these figures mean. It may be, for instance, that the word "Paid," stamped upon a bond or coupon, would be regarded as a part of the instrument for the purposes of this act; but where, as here, there appear words, letters, or figures unexplained, which are not originally any part of the bond or coupon, such words, letters or figures must be regarded as a writing or tangible form of communication, within the purview of section 3, subdivision (c).

For the reasons thus stated, I am of opinion that counts 5 and 6 are good, and that the demurrer in that regard must be overruled.[1]

---

[1] Section 3, subdivision (c), reads as follows:

"Sec. 3. That it shall be unlawful— * * *

"(c) For any person (other than a person in the service of the United States government or of the government of any nation, except that of an enemy or ally of enemy nation, and other than such persons or classes of persons as may be exempted hereunder by the President or by such person as he may direct), to send, or take out of, or bring into, or attempt to send, or take out of, or bring into the United States, any letter or other writing or tangible form of communication, except in the regular course of the mail; and it shall be unlawful for any person to send, take, or transmit, or attempt to send, take, or transmit, out of the United States, any letter or other writing, book, map, plan, or other paper, picture, or any telegram, cablegram, or wireless message, or other form of communication intended for or to be delivered, directly or indirectly, to an enemy or ally of enemy: Provided, however, that any person may send, take, or transmit out of the United States anything herein forbidden if he shall first submit the same to the President, or to such officer as the President may direct, and shall obtain the license or consent of the President, under such rules and regulations, and with such exemptions, as shall be prescribed by the President."